(76 South. 596)

No. 22625.

CITY OF NEW ORLEANS v. MILLER et al.

(June 30, 1917.  Rehearing Denied Oct. 29, 1917.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS ⊜⊐594(5)—REGULATION OF PROSTITUTION—DISTRICTS.

The commission council of the city of New Orleans has authority to regulate houses of prostitution, and may cause the separation of white houses occupied by white prostitutes from those occupied by colored prostitutes, by assigning certain districts to each.

2. MUNICIPAL CORPORATIONS ⊜⊐594(5)—SEGREGATION DISTRICTS.

But the commission council is without authority to say that prostitutes shall not live outside of houses in such places as they may select as dwelling houses.

O'Niell, J., dissenting.

Appeal from Recorder's Court of New Orleans; Louis Burthe, Jr., Recorder.

Sweetie Miller and others appealed from a conviction under an ordinance of the city of New Orleans forbidding colored prostitutes to occupy any house, etc., outside of certain limits.  Judgment reversed, and defendants ordered discharged.

Feitel & Feitel, of New Orleans, for appellants.  I. D. Moore, City Atty., and John F. C. Waldo and George F. Bartley, Asst. City Attys., all of New Orleans, for appellee.

SOMMERVILLE, J.  The three defendants, said to be colored prostitutes, residing at No. 317 North Basin street, in the city of New Orleans, appeal from a judgment and sentence condemning them for having violated section 1 of Ordinance No. 4118, C. C. S.

The affidavit against defendants sets forth:

"That on Thursday, the 1st day of March, 1917, at about 9 o'clock a. m., on premises 317 North Basin street, within the jurisdiction of this court. one Sweetie Miller and others did then and there willfully violate C. O. 4118, C. C. S., § 1, relative to colored prostitutes living outside of limited district, all against the peace and dignity of the city of New Orleans."

Section 1 of Ordinance 4118 is as follows:

"From and after the 1st day of March, 1917, it shall be unlawful for any prostitute or woman notoriously abandoned to lewdness, of the colored or black race, to occupy, inhabit, live or sleep in any house, room or closet situated outside of the following limits, viz.: From the upper side of Perdido street to the lower side of Gravier street, and from the river side of Franklin street to the lower or wood side of Locust street."

The defendants demurred to the affidavit on many grounds, principally:

"Respondents demur to the said suit and affidavit and aver that the said affidavit No. 53864, purporting to show a violation of said Ordinance No. 4118, Commission Council Series, is not sufficient in law to warrant said charge, in that city ordinance, Commission Council Series, section No. 1, does not in fact prohibit prostitution in the premises 317 North Basin street; that the enforcement of said unlawful ordinance would deprive respondents of their personal liberty without due process of law and in derogation of their common rights; that same is oppressive, discriminatory, unjust and impolitic; and that said law is ultra vires of the municipal corporation of the city of New Orleans, unconstitutional and void."

And again, because it (the ordinance) does not fix a minimum and maximum penalty, as the General Assembly is ordered to do in grading all misdemeanors and minor offenses against the state.

There are many other grounds embraced in the demurrer, which are unnecessary to be disposed of in this case, under the view taken by the court of the first above-quoted ground.

Section 2 of the ordinance under consideration makes it unlawful for any white prostitute to occupy, inhabit, live, or sleep in any house, room, or closet situated outside of other limits therein specified.

The ordinance is declared by the city attorney to be one for the purpose of segregating houses of prostitution occupied by white women from those occupied by colored women; by excluding them from all portions of the city, except the two districts in which white houses of prostitution and colored houses of prostitution may be established.

The city attorney says on his brief it is clear that the ordinance does not deprive the respondents of their personal liberty by compelling them to live in certain specified limits in violation of the several articles of the federal and state Constitutions; and that it does not run counter to article 14 of the Constitution of the United States, providing that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law, or otherwise offend against the state or federal Constitution.

Again he says:

"A prostitute is one who practices prostitution, and prostitutes of the colored race are barred from this particular district, and may not occupy any house or room in it under the terms of the ordinance; but a colored girl or woman who does not practice prostitution, who is not a prostitute, may rent or occupy a room in such district if she pleases. It is not colored girls or women, but those who are prostitutes, who are notoriously abandoned to lewdness, who may not hire, occupy or live in houses or rooms outside the district to which the ordinance in sufferance of their violation assigns them. The ordinance, therefore, does not affect colored women taken or considered as such simply, but only those engaged in prostitution."

[1, 2] But section 1 of the ordinance clearly forbids colored prostitutes "to occupy, inhabit, live or sleep in any house, room or closet situated outside of the following limits." Then follow the limits. It does not forbid the establishment of houses of prostitution for colored women outside of the limits stated. It denies to colored prostitutes the right to occupy and live in any house outside of those limits.

That the city of New Orleans has the right to regulate or to abolish houses of prostitution, there can be no doubt. The charter of the city gives this right to the commission council. But, as has just been stated, the ordinance under consideration does not attempt to regulate houses of prostitution in any way, but it directs that prostitutes shall not live outside of certain named localities. In so ordaining, the council has exceeded its authority.

The city attorney admits on his brief that:

"The unfortunate class dealt with by the ordinance must live." And he says: "They are not denied shelter, but assigned that portion of the city beyond which they are not permitted to establish their houses. Thus viewed, the ordinance cannot be deemed open to the objection that it either punishes or grants a license to vice beyond the competency of the council."

There is nothing in the ordinance which forbids the establishment of houses of prostitution. The ordinance denies to prostitutes shelter, by forbidding them to live in certain portions of the city, where they, with other persons, are entitled to live, if they are not living in houses of prostitution.

The right to live in a community is of the very essence of personal freedom and opportunity that the Fourteenth Amendment to the Constitution proposes to secure. The principle is fundamental and vital. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense. Each person in the community has the essential right to live there, and in such place as he may choose to live, provided he lives there in conformity to the laws of the land, and does not engage in any occupation in his domicile which is prohibited by law. The Fourteenth Amendment in declaring that no state shall deprive any person of life, liberty, or property without due process of law, recognizes "liberty" and "property" as coexistent human rights, and deprives the state from any unwarranted interference with either.

A reading of the ordinance shows its purpose to be to restrict colored prostitutes from selecting their homes outside of their houses of prostitution wherein they may be plying their vocation.

The intention of the commission council was, doubtless, as was stated, to separate

the houses of prostitution occupied by white women from those occupied by colored women; but it has failed to do this in the ordinance under consideration. It has gone beyond its power in ordaining, in section 1 of the ordinance, that it shall be unlawful for a colored prostitute to live in the domicile of her selection, provided that that domicile is not a house of prostitution, located without certain defined limits.

The demurrer should have been sustained.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that the defendants herein be ordered discharged from custody.

O'NIELL, J., dissents.